OPINION
Defendant-appellant, Charles R. Trent, appeals an order of the Preble County Court of Common Pleas finding that appellant had committed an act of domestic violence and naming plaintiff-appellee, Cheryl A. Trent, the custodial parent of the parties' children.
The parties were married in 1983 and have three minor children, ages ten, nine and seven. On June 22, 1998, appellee filed a petition in the trial court asking the court to issue a domestic violence protective order against appellant. Following an exparte hearing that same day, the trial court found that appellant had committed an act of domestic violence, issued a civil protection order pursuant to R.C. 3113.31, and granted appellee temporary custody of the children. On June 26, 1998, a hearing was held at which appellant was not present. Apparently, appellant was not served until June 29, 1998. Following the hearing, the trial court continued the civil protection order and appellee's temporary custody and ordered appellant to pay spousal and child support.
On July 7, 1998, appellant filed a motion to set aside the foregoing trial court decision. By entry filed July 9, 1998, the trial court vacated its previous support orders, ordered appellant to pay all of the parties' marital debt, including the bills associated with maintaining the marital residence, revised appellant's child support obligation in light of appellant's obligation to pay the marital debt, granted appellant unsupervised visitation, and continued the civil protection order.
A full and final hearing was held on August 7, 1998. On August 11, 1998, the trial court filed an entry which found that appellant had committed an act of domestic violence and continued the civil protection order. The court further found that it was in the best interest of the children that appellee be named the custodial parent. The trial court did grant appellant visitation "provided that during visitation periods he shall not consume any alcohol." This appeal follows in which appellant raises two assignments of error.
In his first assignment of error, appellant argues that the trial court's finding that he committed an act of domestic violence is against the manifest weight of the evidence because there is no evidence that appellee believed she was in fear of imminent serious physical harm as required by R.C.3113.31(A)(1)(b).[1] In continuing the civil protection order, the trial court found that appellee's "fear of [appellant] was justified given the history of abuse and her present back condition." Appellant asserts that because the trial court's decision did not specifically refer to R.C. 3113.31 (A)(1)(a) or (c), the trial court necessarily rested its decision on R.C.3113.31(A)(1)(b). Appellant contends that because the incidents described in appellee's petition or during the hearings were not close in time to the filing of the petition, the record is devoid of any evidence of appellee's fear of either imminent or serious physical harm.
It is well-established that "[j]udgments supported by some competent and credible evidence going to all essential elements of the case will not be reversed as being against the manifest weight of the evidence." C. E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. An appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court. SeasonsCoal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80. In addition, a trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered evidence. Id.
The decision whether to grant a civil protection order is within the sound discretion of the trial court. Moman v. Smith
(Oct. 14, 1996), Clermont App. No. CA96-05-047, unreported at 6, citing Deacon v. Landers (1990), 68 Ohio App.3d 26, 31. An abuse of discretion is more than an error of law or judgment and implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
After thoroughly reviewing the record, we find that the trial court's finding that appellant committed an act of violence is not against the manifest weight of the evidence. We note at the outset that unlike appellant, we do not believe that the trial court's use once of the word "fear" in relation to appellee necessarily and automatically means that the trial court based its decision solely upon R.C. 3113.31(A)(1)(b). Nor do we believe that the trial court's failure to specifically refer to R.C.3113.31(A)(1)(a) or (c) necessarily and automatically means that the trial court based its decision upon R.C. 3113.31(A)(1)(b). The record shows that neither appellee's original petition nor the trial court's various entries refer to more than R.C. 3113.31(A).
With regard to appellant's argument that there was no evidence that appellee was in fear of imminent serious physical harm because of the staleness of the incidents described by appellee, we find that the language of R.C. 3113.31(A) does not require evidence of "new" domestic violence before a civil protection order may be issued or continued. "[T]he statute does not place any outer limit on when the domestic violence must have occurred. Whether an occurrence of domestic violence is recent enough to warrant a civil protective order is a matter committed to the sound discretion of the trial court." Halley v. Ashley
(Nov. 12, 1997), Summit App. No. 18232, unreported, at 2, fn. 2.
During the August 7, 1998 hearing, both parties agreed that early in their marriage, a beer can thrown by appellant hit appellee, and that appellant broke a coffee pot over appellee's head. However, the parties' descriptions of these incidents and their consequences differed. Appellee testified that appellant threw the beer can directly at her, hitting her on the hip and bruising it. Appellant testified that he threw the beer can on the floor "and it probably bounced 15 foot or so and hit her right in the side of the face." With regard to the coffee pot, appellee testified that she suffered cuts on her scalp as a result. Appellant testified that he was tapping appellee on the head with a "real thin" coffeemaker so that appellee, who was talking to someone else, would pay attention to him, when the bottom of the pot cracked and broke. Appellant testified that appellee suffered no injuries.
Appellee testified that over the years, appellant has thrown dishrags, beer cans, coffee cups, and "pretty much whatever happen[ed] to be at hand" at her. Appellant testified that he "might have been teasing [appellee] years ago with an empty beer can and hit her on the behind or something going past [him], teasing thing[,]" but denied ever throwing anything else at her.
Appellee testified that she is terrified of appellant and of his anger. Appellee stated that appellant gets angry very often, more so when he consumes alcohol, and that he has damaged the house several times. Such damage includes a hole in the drywall caused by appellant kicking his heel into the drywall, and a broken door frame caused by appellant slamming the door. Appellee testified that when appellant "comes from work, you hope he's come straight home so he hasn't stopped to intensify [his anger] with alcohol." Appellee also testified that while appellant has not physically touched her since May 1998 when he shoved her into a wall, he has forced her to have intercourse as recently as two months before the hearing. Appellee stated that appellant has sodomized her on numerous occasions and that he usually warns her in advance that she will need something for the pain. Appellee denied being sodomized voluntarily.
Finally, appellee testified that appellant has told her that if she ever tried to divorce him, she would "drop off the face of the earth," he "would take the kids and run," their children would never know who she was, and that "he had an arrow and nobody could trace an arrow back to him." Appellee testified that appellant's comments were threatening, that they frightened her, and that she was afraid appellant would carry these threats out.
Appellant denied ever threatening to shoot appellee with an arrow. Appellant did state however that when he used to compete in archery, he once made the comment to appellee that "if a person ever really wanted to kill somebody that would be the thing to do because they couldn't chase [sic] the ballistics." While appellant admitted once ripping a telephone out of the wall out of anger, he denied damaging anything else in the house. Appellant denied forcing appellee to be sodomized and stated that she had never objected to it. With regard to his alcohol consumption, appellant testified that it never interfered with his work. Appellant admitted, how ever, that "sometimes [he] might have had one too many." Finally, appellant testified that appellee was lying, especially with regard to the abuse, and that she was "living in her own little fairy tale world and believe[d] everything she sa[id]." Appellant, however, admitted striking appellee at the beginning of their relationship because he "just lost it."
During in camera interviews with the trial judge, the parties' two older children testified that their parents verbally fought a lot before appellant left the marital residence, which confrontations took place in the parents' bedroom, and that they (the children) would have "to turn the tv up so loud" so as to cover their parents' yelling and screaming. Both children stated that they never saw their parents hitting one another. All three children testified that appellant gets very angry after he drinks too much and that he has broken door frames by slamming the door and put a hole in the drywall by kicking his heel in the drywall. The oldest child testified that since appellant left the marital residence, things have not been broken up.
In light of all of the foregoing, we find that competent credible evidence was presented to support a finding of domestic violence under R.C. 3113.31(A)(1). We therefore find that the trial court's finding that appellant had committed an act of domestic violence against appellee was not against the manifest weight of the evidence. We further find that the trial court's continuation of the civil protection order was not an abuse of discretion. Appellant's first assignment of error is overruled.
In his second assignment of error, appellant argues that the trial court's finding that naming appellee custodial parent was in the best interest of the children was against the manifest weight of the evidence especially in light of appellee's substance abuse and daily intake of two prescription medications.
In its decision filed August 11, 1998, the trial court found that:
 There is significant evidence to establish that [appellee] smokes marijuana and that she may abuse other controlled substances. However, after talking to the children it does not appear that they are aware of [appellee's] problem with drugs nor does it appear that same has adversely affected them to date. It appears that [appellee] has been successful in hiding her usage from the children. The Court does not condone [appellee's] conduct (in fact the Court considered certifying the case to the Juvenile Division for determination of the proper placement of the children); however, it does not appear that same has had an adverse impact on the children.
 For the time being the best interests [sic] of the children are served in continuing their placement with [appellee]. [Appellant] shall have visitation * * * provided that during visitation periods he shall not consume any alcohol. (Emphasis added.)
Under R.C. 3109.04(B)(1), a domestic relations court decides to whom the care, custody, and control of a minor child shall be awarded, giving paramount consideration to the best interest of the child. In determining the child's best interest, the trial court must consider the factors set forth in R.C. 3109.04(F)(1) which include:
 (a) The wishes of the child's parents regarding his care;
 (b) If the court has interviewed the child in chambers * * *, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelation ship with his parents, siblings, * * *;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all per sons involved in the situation;
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court[.]
It is well-established that where an award of custody is sup ported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 22. In addition, "[i]n proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation cannot be conveyed to a reviewing court by the printed record."Id., quoting Trickey v. Trickey (1952), 158 Ohio St. 9, 13.
The record shows that appellant works "swing shifts" and works many overtime hours. Appellee described "swing shift" as "[o]ne week he is on thirds, the next week he is on seconds and then the week after he'll be on first. And then it starts over again." Appellee testified that she does not work and that she has been the children's primary caretaker. Appellee also testified that the children have lived in the marital residence all their lives, that they go to school in the school district, and that they are integrated in the community. Appellee opined that it would be in the children's best interest for her to remain the custodial parent because it "would be less of a disturbance for them [than] to be thrown back and forth."
Appellee admitted using marijuana recreationally. Appellee testified, however, that she always hid her usage from the children by sending them to play outside. Appellee also admitted having used cocaine before. Appellee testified, however, that she never used cocaine recreationally. Rather, she would take it to forget about and kill the pain she would suffer while being forcefully sodomized by appellant. Appellee testified that she was not allowed to go see a doctor just for pain, that she would thus take the cocaine before being sodomized, and that she never took it after. A review of the children's in camera interviews supports the trial court's finding that "it does not appear that [the children] are aware of [appellee's] problem with drugs nor does it appear that same has adversely affected them to date."
Appellee also testified that she takes two prescriptions daily, namely, Soma, a muscle relaxer, and Xanax "because of a nerve problem."[2] Appellee testified that she takes these prescriptions under her physician's guidance and that, unlike another prescription she used to take, they do not cause her to stop functioning. Appellee testified that she also takes Darvocet for headaches and "period cramps" when needed.
The record shows that while the children have no knowledge of their mother's usage of marijuana or cocaine, they are by contrast painfully aware of their father's drinking problem. As already stated, all three children testified that appellant gets very angry after he drinks too much and that he has damaged the marital residence when angry. The oldest child testified that appellant drinks "badly most of the time." The older two children also testified that appellant drinks and drives. As already noted, appellant downplays his alcohol consumption by stating it never interfered with his work and that he has had "one too many" only occasionally.
All three children testified that things have been better since appellant left the marital residence. While all three children testified without hesitation that their mother was a "good person," that was not so with regard to their father. All three children conditioned their answer on whether appellant was drinking or not. All three children stated that their father was a good person when he was not drinking a lot.
In light of all of the foregoing, we find that competent credible evidence supports the trial court's finding that "[f]or the time being the best interests [sic] of the children are served in continuing their placement with [appellee]." We therefore find that the designation of appellee as the custodial parent is not against the manifest weight of the evidence. Appellant's second assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and VALEN, J., concur.
[1] R.C. 3113.31(A)(1) defines domestic violence as "the occurrence of one or more of the following acts against a family or household member: (a) Attempting to cause or recklessly causing bodily injury; (b) Placing another person by the threat of force in fear of imminent serious physical harm * * *; (c) Committing any act with respect to a child that would result in the child being an abused child * * *."
[2] Soma is prescribed "for the relief of pain, muscle spasm, and limited mobility associated with acute, painful musculoskeletal conditions." Physicians' Desk Reference (52 Ed. 1998) 2969. Appellee testified that several years ago, her parked car was hit from behind by another car, and that she has been suffering from back problems ever since. Xanax is prescribed for "the management of anxiety disorder * * * or the short-term relief of symptoms of anxiety." Id. at 2294.